# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### AT ATLANTA

MICHAEL E. BROHM,

    Plaintiff,

      v.

NAUTIC PARTNERS, LLC, SCOTT
HILINSKI, KENNETH McGEE, and
CHESTER CROUCH

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 1:18-cv-03995

Hon. Amy Totenberg

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................4

ARGUMENT ...................................................................................10

I.   THE COURT LACKS PERSONAL JURISDICTION OVER
     DEFENDANTS. ..........................................................................11

     A.   Plaintiff's Complaint Fails To Allege Facts Sufficient To
          Support Exercise Of Jurisdiction Under The Georgia Long-Arm
          Statute. ............................................................................13

     B.   Plaintiff's Complaint Fails To Allege Facts Sufficient To Show
          That Exercise Of Jurisdiction Comports With Due Process. ..............16

II.  THIS COURT IS NOT A PROPER VENUE FOR PLAINTIFF'S
     SUIT..........................................................................................19

III. PLAINTIFF HAS RELEASED HIS CLAIMS AGAINST
     DEFENDANTS. ..........................................................................21

IV.  PLAINTIFF'S CLAIM FOR FRAUD (COUNT I) IS TIME-
     BARRED AND IN ANY EVENT FAILS TO STATE A CLAIM
     UNDER RULES 9 AND 12(b)(6)..................................................24

     A.   Delaware's Three-Year Statute Of Limitations Bars Plaintiff's
          Fraud Claims. ....................................................................25

     B.   Plaintiff Fails To State A Claim For Fraud.................................25

V.   PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY
     (COUNT II) IS TIME-BARRED AND IN ANY EVENT FAILS TO
     STATE A CLAIM FOR RELIEF....................................................29

     A.   Delaware's Three-Year Statute Of Limitations Bars Plaintiff's
          Claims..............................................................................29

B.    Plaintiff Expressly Waived Any Claim For Breach Of Fiduciary Duty Related To New Reliant Or The Class A Units. ........................30

VI.   PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT III) IS TIME-BARRED AND IN ANY EVENT FAILS TO STATE A CLAIM FOR RELIEF. .................33

A.    Delaware's Two-Year Statute of Limitations Bars Plaintiff's Claim. ...................................................................................33

B.    Plaintiff Has Failed To State A Claim For Intentional Infliction Of Emotional Distress. ........................................................34

CONCLUSION ........................................................................35

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Jankouskas*,
452 A.2d 148 (Del. 1982) .....................................................................................22

*Adams v. Town of Burrillville ex. rel. Mainville*,
249 F. Supp. 2d 151 (D.R.I. 2003) ............................................................. 33, 34

Aero Toy Store, LLC v. Grieves,
279 Ga. App. 515, 631 S.E.2d 734 (2006) .........................................................15

*Ahmed v. United Airlines, Inc.*,
1998 WL 289294 (N.D. Cal. Apr. 21, 1998).......................................................19

*Anderson v. Anderson-Harrison*,
2013 WL 4492797 (Del. Super. Ct. Aug. 15, 2013)...........................................33

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................35

*Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*,
768 F.2d 1055 (11th Cir. 1986) ...........................................................................18

*Brooks v. Blue Cross and Blue Shield of Florida, Inc.*,
116 F.3d 1364 (11th Cir. 1997) ...........................................................................26

*Bryant v. Avado Brands, Inc.*,
187 F.3d 1271 (11th Cir. 1999) .............................................................................5

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)........................................................................ 12, 16, 17, 18

*Carr v. Town of Dewey Beach*,
730 F. Supp. 591 (D. Del. 1990)..........................................................................33

*Chakov v. Outboard Marine Corp.*,
429 A.2d 984 (Del. 1981) .....................................................................................22

*Champlin v. Washington Trust Co. of Westerly*,
478 A.2d 985 (R.I. 1984) ......................................................................34

*Chlebda v. H.E. Fortna and Bro., Inc.*,
609 F.2d 1022 (1st Cir. 1979) ...............................................................18

*Day v. Taylor*,
400 F.3d 1272 (11th Cir. 2005) ...............................................................5

*Deuley v. DynCorp. Int'l, Inc.*,
8 A.3d 1156 (Del. 2010) .............................................................. 22, 23

*Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*,
593 F.3d 1249 (11th Cir. 2010) ...................................................... passim

*Fisk Ventures, LLC v. Segal*,
2008 WL 1961156 (Del. Ch. May 7, 2008) ..........................................32

*Gayda v. Union of Soviet Socialist Republics*,
1987 WL 6390 (E.D.N.Y. Feb. 3, 1987) ..............................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915 (2011) ...............................................................................17

*Griffin Industries, Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ...............................................................8

*Halstead v. Am. Int'l Group Inc.*,
2005 WL 885200 (D. Del. Mar. 11, 2005) ...........................................23

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
466 U.S. 408 (1984) ...............................................................................17

*In re American Intern. Group, Inc.*,
965 A.2d 763 (Del. Ch. 2009) ...............................................................24

*In re Atlas Energy Resources, LLC*,
2010 WL 4273122 (Del. Ch. Oct. 28, 2010) ........................................32

*In re DaimlerChrysler AG Securities Litigation*,
247 F. Supp. 2d 579 (D. Del. 2003).......................................................14

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007) .............................................................29

*Innovative Clinical & Consulting Servs., LLC v. First Nat'l*
*Bank of Ames*,
  620 S.E.2d 352 (Ga. 2005) .................................................... 12, 13, 16

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945).........................................................................16

*Isaacson, Stolper & Co. v. Artisan's Sav. Bank*,
  330 A.2d 130 (Del. 1974) ..................................................................29

*Krenkel v. Kerzner Int'l Hotels Ltd.*,
  579 F.3d 1279 (11th Cir. 2009) ................................................... 20, 21

*Lakeside Bridge & Steel Co. v. Mt. State Constr. Co., Inc.*,
  597 F.2d 596 (7th Cir. 1979) .............................................................18

*Lankford v. Scala*,
  1995 WL 156220 (Del. Super. Ct. Feb. 28, 1995) .............................33

*Lipcon v. Underwriters at Lloyd's, London*,
  148 F.3d 1285 (11th Cir. 1998) .........................................................19

*Long v. Slaton*,
  508 F.3d 576 (11th Cir. 2007) .............................................................4

*Lozman v. City of Riviera Beach, Fla.*,
  713 F.3d 1066 (11th Cir. 2013) ...........................................................6

*Mates v. North American Vaccine, Inc.*,
  53 F. Supp. 2d 814 (D. M.D. 1999)...................................................15

*Mears v. Gulfstream Aerospace Corp.*,
  225 Ga. App. 636, 484 S.E.2d 659 (1997) ........................................34

*Oldfield v. Pueblo De Bahia Lora, S.A.*,
  558 F.3d 1210 (11th Cir. 2009) .........................................................18

*Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim*
  *Hizmetleri, Ltd. Sikerti,*
  15 F.3d Supp. 2d 47 (D.D.C. 1998) ....................................................14

*Rudnitsky v. Rudnitsky,*
  2001 WL 1671149 (Del. Ch. Dec. 20, 2001).......................................23

*Scullin Steel Co. v. Nat'l Ry. Utilization Corp.,*
  676 F.2d 309 (8th Cir. 1982) .............................................................18

*Shaffer v. Heitner,*
  433 U.S. 186 (1977).............................................................................17

*Slater v. Energy Servs. Group Int'l, Inc.,*
  634 F.3d 1326 (11th Cir. 2011) .................................................... 19, 20

*SmithKline Beecham Pharms. v. Merck & Co.,*
  766 A.2d 442 (Del. 2000) ...................................................................24

*Sojka v. Loyalty Media LLC,*
  2015 WL 2444506 (N.D. Ill. May 20, 2015).......................................15

*Spence v. Cherian,*
  135 A.3d 1282 (Del. Super. Ct. 2016) ........................................... 34, 35

*Steel Warehouse of Wisconsin, Inc. v. Leach,*
  154 F.3d 712 (7th Cir. 1998) ..............................................................15

*Sulak v. American Eurocopter Corp.,*
  2009 WL 2849136 (D. Haw. Aug. 26, 2009) .......................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007)...............................................................................4

*Thomas v. Hartford Mut. Ins. Co.,*
  2004 WL 1102362 (Del. Super. Ct. Apr. 7, 2004) ..............................35

*Trenwick Am. Litig. Tr. v. Billett,*
  931 A.2d 438 (Del. 2007) ...................................................................25

1717179.1

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
   906 A.2d 168 (Del. Ch. 2006) ............................................................25

*Trimble v. Circuit City Stores*,
   220 Ga. App. 498, 469 S.E.2d 776 (1996) ...........................................34

*U.S. v. Jones*,
   29 F.3d 1549 (11th Cir. 1994) .............................................................6

*United Techs. Corp. v. Mazer*,
   556 F.3d 1260 (11th Cir. 2009) .................................................... 11, 12

*Vallinoto v. DiSandro*,
   688 A.2d 830 (R.I. 1997) ....................................................................34

*Willis v. Arp*,
   165 F. Supp. 3d 1357 (N.D. Ga. 2016) .................................................8

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ...........................................................................17

*Zapata v. HSBC Holdings plc*,
   2017 WL 6939209 (S.D. Tex. Sept. 14, 2017) ....................................19

*Ziemba v. Cascade Int'l, Inc.*,
   256 F.3d 1194 (11th Cir. 2001) ..........................................................26

## Statutes

9 R.I. Gen. Laws § 9-1-14(b) ...............................................................33

Del. Code Ann. tit. 10, § 8106(a) ................................................... 24, 29

Del. Code Ann. tit. 10, § 8119 .............................................................33

Del. Code Ann. tit. 6, § 18-1101(c) ......................................................31

Ga. Code Ann., § 9-3-33 ......................................................................33

O.C.G.A § 9-10-91 ...............................................................................12

O.C.G.A. § 9-10-91(1) ..................................................................... 13, 15

O.C.G.A. § 9-10-91(2) ..............................................................14

O.C.G.A. § 9-10-91(3) ................................................... 12, 13, 14

O.C.G.A. § 9-10-91(4) ..............................................................13

**Other Authorities**

5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
   § 1357 (3d ed. 2004) ............................................................5

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ...................................... 10, 11

Federal Rule of Civil Procedure 12(b)(3) ...................................... 10, 19

Federal Rule of Civil Procedure 12(b)(6) .................................. 11, 21, 35

Federal Rule of Civil Procedure 9(b).......................................25

Federal Rule of Evidence 201(b) .............................................6

# INTRODUCTION

This is a baseless lawsuit.

Plaintiff Michael Brohm, the disgraced former CEO of an in-patient rehabilitation hospital company ("New Reliant") once owned by private equity funds managed by Nautic Partners, LLC ("Nautic"), has sued Nautic, one of its managing partners, Scott Hilinski, and two former executives of New Reliant, Kenneth McGee and Chester Crouch. Plaintiff alleges defendants defrauded him, breached their fiduciary duties, and caused him emotional distress by failing to tell him of future transactions before New Reliant exercised its contractual right to buy back his ownership units in the company. Plaintiff asserts these frivolous claims even though he expressly released them in a settlement agreement associated with that buyout—just one of the myriad fundamental flaws in his Complaint. Another gaping defect is plaintiff's omission of a key fact: New Reliant terminated plaintiff after he engaged in litigation-related misconduct for which he was later sanctioned, convicted in a criminal contempt proceeding, and actually served a jail sentence.

Entirely for his own convenience, plaintiff has sued defendants in this Court, which has no connection to plaintiff's brief but disastrous employment at New Reliant (in Texas); to the relevant agreements signed by the parties (which specify the application of Delaware law and the exclusive jurisdiction of Delaware courts);

or to any of the defendants (who are a Delaware LLC headquartered in Rhode Island, a Massachusetts resident, and two Texas residents). Indeed, other than being plaintiff's home, the State of Georgia has no connection to any aspect of this lawsuit. Nevertheless, plaintiff attempts to haul defendants into court hundreds of miles from where they reside or do business to defend transactions that occurred elsewhere pursuant to Delaware law. He cannot do so. Simply put, this Court lacks personal jurisdiction over plaintiff's claims. And even assuming, counterfactually, that the Court could assert personal jurisdiction over defendants, this case should be dismissed for improper venue because plaintiff signed a clear forum selection clause requiring him to file his claims in Delaware.

Plaintiff's Complaint should also be dismissed for failure to state a claim. Following his termination and criminal contempt conviction (for failing to comply with a Texas court order to preserve documents in litigation pending against New Reliant), New Reliant notified plaintiff it was exercising its right to repurchase his shares at cost and sent him a check for $318,428.59. Plaintiff accepted the money, but claimed he was entitled to the fair market value of his units, not their initial cost, and demanded more. To resolve the dispute, plaintiff entered into a settlement agreement pursuant to which New Reliant paid plaintiff an additional $129,296.00. In exchange for that additional consideration, plaintiff released New

Reliant and defendants from any and all claims related to New Reliant's repurchase of his shares. Plaintiff's Complaint directly violates that release; and while plaintiff suggests he was defrauded into agreeing to the settlement, any such claim is barred because plaintiff ratified the settlement by failing to return the consideration he received for signing it.

Wholly apart from the settlement agreement and release, plaintiff's Complaint does not allege facts sufficient to plead any cause of action. His claim for fraud (Count I) is barred by the applicable statute of limitations and is vaguely pled—failing to identify any duty defendants had to disclose any information to him, or how defendants could have defrauded him by failing to inform him of events which had not yet occurred. His claim for breach of fiduciary duty (Count II) is likewise time-barred and in any event fails because plaintiff unambiguously signed a New Reliant LLC agreement that released defendants from any fiduciary duties they might otherwise have had to plaintiff. Finally, plaintiff's claim for intentional infliction of emotional distress (Count III) is time-barred and, furthermore, fails to allege any sort of extreme or outrageous conduct by any of the defendants as required to state such a claim. For these reasons, all of which are discussed below, plaintiff's Complaint should be dismissed.

## BACKGROUND

Defendant Nautic is a Rhode Island private equity firm that manages funds which invest in healthcare companies. (Complaint, Dkt. No. 1 ("Compl.") ¶¶ 2, 29.) In late 2010, plaintiff was the CEO of Cornerstone Healthcare Group ("Cornerstone"), a Texas-based long-term acute-care hospital company. Plaintiff was unhappy at Cornerstone, so he approached Nautic about investing in Reliant Hospital Partners ("Old Reliant"), a Texas-based in-patient rehabilitation hospital chain. (*Id.* ¶¶ 10, 12, 14, 22, 28.) Plaintiff proposed to defendant Scott Hilinski, a Nautic managing director, that Nautic acquire Reliant and hire plaintiff and other Cornerstone executives, including defendant Kenneth McGee, to run it. (*Id.* ¶ 30.)

On March 23, 2011, after extensive due diligence and consultations with counsel, a Delaware limited liability company owned by certain Nautic-sponsored private equity funds acquired the assets of Old Reliant for about $45 million. (*Id.* ¶ 36; *see also* Ex. 1, 3/23/11 Reliant Holding Company, LLC Limited Liability Company Agreement (hereinafter, "LLC Agreement").)[1] That same day, plaintiff

---

[1] This court may take judicial notice of the LLC Agreement (along with the other agreements cited in and appended to this motion) because it has been incorporated into the Complaint by reference. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (upon a motion to dismiss, a court may consider court assessing securities fraud complaint should consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th

and McGee left Cornerstone and became New Reliant's CEO and COO, respectively. (Compl. ¶¶ 36–39.) Three other Cornerstone employees—Patrick Ryan, Jerry Huggler, and Chad Deardorff—also left Cornerstone to work at New Reliant. (*Id.* ¶¶ 36–39, 41.) Defendant Chester Crouch, Old Reliant's COO, stayed on and became New Reliant's Chief Development Officer. (*Id.* ¶¶ 22, 36, 42.)

Upon joining New Reliant, plaintiff signed an LLC Agreement and an Employment Agreement. (*Id.* ¶ 36, Ex. 1, Ex. 2, 3/23/11 Employment Agreement.) Pursuant to the LLC Agreement, plaintiff invested $400,000 to obtain 400,000 Class A Units representing membership rights in New Reliant. (Compl. ¶¶ 36–37, Ex. 1, LLC Agreement at Schedule A.)[2] Plaintiff agreed that,

---

Cir. 2007) ("At the 12(b)(6) stage, we 'primarily consider the allegations in the complaint,' but '[t]he court is not [always] limited to the four corners of the complaint.'") (alterations in original) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 376–77 (3d ed. 2004)); *Bryant v. Avado Brands, Inc*., 187 F.3d 1271, 1277-78 (11th Cir. 1999) (judicial notice of documents is appropriate where "plaintiff has relied on them in framing the complaint") (citation omitted); *see, e.g.*, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (taking judicial notice of contract referenced in plaintiff's complaint in considering motion to dismiss).

[2] New Reliant also gave plaintiff the ability to earn additional ownership units (in particular, up to 400,000 Class B Units, and up to 1,467,745 Class C-1 Units, Class C-2 Units, and Class C-3 Units) under conditions specified in an Incentive Units Agreement and Letter Agreement. (Ex. 3, 3/23/11 Incentive

upon his termination from New Reliant, the Company would have the right to repurchase his Class A Units. In particular, Section 7.9 of the LLC Agreement provided that, upon termination for "Cause," the Company could repurchase his Class A Units at the lower of fair market value or his purchase price; otherwise, the Company could repurchase his Units at fair market value. (Ex. 1, LLC Agreement § 7.9(a), (b).)

Within two weeks of the New Reliant transaction, Cornerstone sued plaintiff, McGee, and the other former Cornerstone executives, as well as Nautic and Hilinski, in Texas state court, alleging that plaintiff and the other executives had breached their fiduciary duties to Cornerstone by failing to bring the New Reliant opportunity to Cornerstone, and that Hilinski and Nautic had aided and abetted in that breach. (Compl. ¶ 40.) The Texas court issued a Temporary Restraining Order against plaintiff and the other former Cornerstone executives, prohibiting them from "using or disclosing [Cornerstone's] confidential or proprietary information." (Ex. 5, 4/7/11 Order, at 8.)[3] Several weeks later, the

Units Agreement ("Incentive Units Agreement"); Ex. 4, 3/23/11 Letter Agreement ("Letter Agreement"); *see also* Compl. ¶ 37.)

[3] The Court may take judicial notice of this and the other state court orders and judgments appended to this motion under Federal Rule of Evidence 201(b). *See Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) ("Although this matter is before the court on a motion to dismiss, we may

court further prohibited plaintiff and other defendants from "retaining any originals or hard copies of materials, property, documents, data, and any other information obtained . . . during [his] employment with Cornerstone" and specifically ordered plaintiff to "return to Cornerstone by Monday, May 2, 2011, all such materials in [his] possession, custody or control." (Ex. 6, 4/28/11 Order at 3.)

Meanwhile, New Reliant learned of evidence that plaintiff had not complied with the Court's orders and that plaintiff had even retained and potentially attempted to destroy documents and data that he and some of the other executives had taken from Cornerstone when they left for New Reliant. New Reliant therefore placed plaintiff and the other executives on administrative leave while their conduct was investigated. (*See* Compl. ¶ 41.) After more facts came out, New Reliant terminated plaintiff,[4] Ryan, Deardorff, and Huggler but retained McGee and Crouch, who replaced plaintiff as New Reliant's CEO. (*See id.* ¶ 42.)

---

take judicial notice of the court documents from the state eviction action."); *U.S. v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("[A] court may take notice of another court's order only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation.").

[4] On June 30, 2011, plaintiff signed a letter agreement with Nautic confirming his termination and further confirming that, except for the provisions specifically mentioned in the letter, "[a]ll other rights and obligations of the parties under the Employment Agreement, and the Related Agreements referenced therein, that are not specifically referenced in this letter are reserved." (Ex. 9, 6/30/11 Letter Termination Agreement.)

Later, plaintiff was held in criminal contempt of court for violating the Temporary Restraining Orders—and was sentenced to 180 days in jail and thousands of dollars in fines for those violations.  (*See* Ex. 7, 4/30/12 Order Granting Motion to Show Cause; Ex. 8, 5/24/12 Judgment of Contempt.)

Due to his misconduct, plaintiff served as CEO of New Reliant for only five weeks and, therefore, did not qualify to earn any of his incentive ownership units. Thus, while plaintiff baldly alleges that he received "Class B Units (Founder's Shares) equal to his initial cash investment in Class A Units" (Compl. ¶ 37), the truth is that none of those incentive units vested because plaintiff was terminated long before his one-year anniversary at New Reliant and long before the company was sold.  (*See* Ex. 3, Incentive Units Agreement §§ 2 and 3(b).) [5]

---

[5] Because plaintiff's allegations regarding his ownership of the Class B Units are directly contradicted by the documents his Complaint relies upon to make those allegations, the Court need not accept them as true for purposes of this motion. *See Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.  Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Willis v. Arp*, 165 F. Supp. 3d 1357, 1359 (N.D. Ga. 2016) (Totenberg, J.) ("While courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive there from, they need not accept factual claims that are internally consistent; facts which run counter to facts of which the court can take judicial notice; conclusory allegations; unwarranted deductions; or mere legal conclusions asserted by a party.") (quotation omitted).

Plaintiff retained his 400,000 Class A Units until August 18, 2014, when New Reliant exercised its right to repurchase them for $318,428.59. (Compl. ¶ 48.) That payment represented plaintiff's initial purchase price of $400,000 minus $81,571.41 previously distributed to plaintiff as a return of capital. (*Id*.) Plaintiff accepted the money, but claimed that he was entitled to a higher fair market value for his Units. (*Id*. ¶ 49.) Plaintiff eventually agreed to settle the parties' dispute by accepting an additional $129,296 for his Class A Units and signing a comprehensive Settlement Agreement dated September 16, 2014. (*Id*. ¶ 49.) In that agreement, plaintiff released New Reliant and its affiliates from any further claims relating to the repurchase. (Ex. 10, 9/16/14 Settlement Agreement ("Settlement Agreement") §§ 2(a), 5.) Furthermore, plaintiff affirmatively represented he had conducted his own investigation and was not relying on others in entering into the Settlement Agreement. (*Id*. § 3(b).)

Later in 2014, after New Reliant had expanded by purchasing two hospitals in eastern Massachusetts, the company underwent a recapitalization that paid a substantial dividend to its equity holders. (*See* Compl. ¶ 51.) The following year, on October 1, 2015, HealthSouth Corporation ("HealthSouth") acquired New Reliant in a very profitable transaction for New Reliant's owners. (*Id*. ¶ 53.)

Plaintiff now brings suit, purporting to state claims for fraud (Count I), breach of fiduciary duty (Count II), and intentional infliction of emotional distress (Count III). As to Count One, plaintiff alleges that defendants were aware of the recapitalization and HealthSouth sale when plaintiff sold his Class A Units to New Reliant, but "intentionally offer[ed] him less than the accumulated value of his Class A Units and fail[ed] to inform him or otherwise make him aware of Reliant's recapitalization and sale to HealthSouth." (Compl. ¶¶ 57–65.) Count Two alleges defendants breached their fiduciary duties to plaintiff by failing to disclose the ensuing recapitalization and the HealthSouth sale. (*Id*. ¶¶ 66–76.) Finally, Count Three alleges that defendants' failure to inform plaintiff in September 2014 of the future recapitalization and sale to Health South was "intentional or reckless," "extreme and outrageous and intended to harm Brohm," and "caused Brohm to suffer and experience emotional distress, which was severe." (*Id*. ¶¶ 77–82.)

## ARGUMENT

Plaintiff's Complaint must be dismissed for three independent reasons. ***First***, the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over defendants. None of the defendants has the minimum contacts with the State of Georgia necessary to permit the Court to exercise general jurisdiction. And because none

of the Complaint's allegations arise out of activity in Georgia, the Court also lacks

specific jurisdiction.  **_Second_**, the Complaint must be dismissed for improper venue

under Rule 12(b)(3) because plaintiff signed an unambiguous forum selection

clause requiring him to bring his claims in Delaware.  **_Third_**, the Complaint must

be dismissed under Rule 12(b)(6) for failure to state a claim.  Plaintiff has already

released and promised not to sue defendants for these very claims; his fraud claim

is time-barred and inadequately pled; his breach of fiduciary claim is time-barred

and has been contracted away as a matter of law; and his claim for intentional

infliction of emotional distress is time-barred and fails to state a claim for relief.

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS.

Plaintiff's Complaint must be dismissed under Rule 12(b)(2) because this

Court lacks personal jurisdiction over defendants—a Delaware LLC headquartered

in Rhode Island, a Massachusetts resident, and two Texas residents—and the

subject matter of plaintiff's Complaint involves the sale of ownership interests in a

Delaware LLC doing business in Texas.  The only connection this Court has to this

case is that plaintiff is a resident of Georgia; but that is not sufficient, as a matter of

law, to establish personal jurisdiction over nonresident defendants.

"'A plaintiff seeking the exercise of personal jurisdiction over a nonresident

defendant bears the initial burden of alleging in the complaint sufficient facts to

make out a prima facie case of jurisdiction.'" *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010), quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).[6] Any assertion of personal jurisdiction over a nonresident defendant must also satisfy statutory and constitutional requirements. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 470 (1985). Thus, for the Court to establish personal jurisdiction over a non-resident defendant, the defendant must have (1) engaged in some activity set forth in Georgia's Long-Arm Statute, O.C.G.A § 9-10-91, and (2) the exercise of personal jurisdiction must comport with due process. *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1257–58.[7] Plaintiff's Complaint fails on both counts.

---

[6] In addition, "'[w]here, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction.'" *Diamond Crystal Brands, Inc.*, 593 F.3d at 1257, quoting *United Techs. Corp.*, 556 F.3d at 1274.

[7] The Georgia Supreme Court has explained that the long-arm statute is not coextensive with due process because the statute's various "limiting conditions may *preclude* a Georgia court from exercising personal jurisdiction over the nonresident to the fullest extent permitted by constitutional due process." *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 354 (Ga. 2005) (construing O.C.G.A. § 9-10-91(3)) (emphasis added).

### A. Plaintiff's Complaint Fails To Allege Facts Sufficient To Support Exercise Of Jurisdiction Under The Georgia Long-Arm Statute.

The Georgia long-arm statute provides that "an out-of-state defendant must do certain acts within the State of Georgia before he can be subjected to personal jurisdiction." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1259, citing *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames*, 620 S.E.2d 352, 353 (Ga. 2005). In particular, pursuant to the statute, a court may assert personal jurisdiction over a defendant who:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(4) Owns, uses, or possesses any real property situated within this state[.] . . .

O.C.G.A. § 9-10-91(1)–(4). None of these circumstances is present here.

Plaintiff does not allege that any defendant "owns, uses, or possesses" any property in Georgia. *See* O.C.G.A. § 9-10-91(4). Nor could he. Nautic is a Delaware limited liability company with a principal place of business in Providence, Rhode Island, and is ***not*** authorized to do business in Georgia.

(Compl. ¶ 2.)  Hilinski is and was at all times relevant to this action a citizen and resident of Massachusetts.  (*Id*. ¶ 3.)  McGee and Crouch are both citizens and residents of Texas.  (*Id*. ¶¶ 4–5.)  And none of the defendants owns or has owned, or leases or has leased, any Georgia property.  (Ex. 11, Nautic Aff. ¶ 3; Ex. 12, Hilinski Aff. ¶ 3; Ex. 13, McGee Aff. ¶ 3; Ex. 14, Crouch Aff. ¶ 3.)

Nor does plaintiff allege that any defendant committed a tortious act or omission within the State of Georgia.  *See* O.C.G.A. § 9-10-91(2).  Indeed, other than making the unsupported boilerplate allegation that "a substantial part of the events or omissions giving rise to the action occurred in this judicial district" (Compl. ¶ 7), the Complaint is bereft of any indication that any defendant engaged in ***any*** conduct in Georgia, let alone tortious conduct.

Although the Georgia long-arm statute also permits jurisdiction where the alleged tort occurred outside of the state but caused an injury in the state when the defendant "regularly does or solicits business" in Georgia, *see* O.C.G.A. § 9-10-91(3), none of the defendants does so.  Indeed, the Complaint itself makes no allegations of such contacts because there are none.  (Ex. 11, Nautic Aff. ¶¶ 2–5;

Ex. 12, Hilinski Aff. ¶¶ 3, 6;[8] Ex. 13, McGee Aff. ¶¶ 3–4; Ex. 14, Crouch Aff. ¶¶ 3–4.)

Finally, the Complaint does not allege that any defendant "[t]ransacts any business within [Georgia]." O.C.G.A. § 9-10-91(1). Under Georgia law, to "transact business" a defendant must have "purposefully done some act or consummated some transaction in [the] state." *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 631 S.E.2d 734, 737 (2006). The Complaint alleges no such transactions, and, again, there are none. (Ex. 11, Nautic Aff. ¶¶ 2–5, Ex. 12, Hilinski Aff. ¶¶ 3, 6; Ex. 13, McGee Aff. ¶¶ 3–4; Ex. 14, Crouch Aff. ¶¶ 3–4.) The

---

[8] Although Hilinski has served in years past, and is serving, on the board of a Georgia company unrelated to this lawsuit, that contact in his corporate capacity is not sufficient to permit jurisdiction over Hilinski in his individual capacity. *See In re DaimlerChrysler AG Securities Litigation*, 247 F. Supp. 2d 579, 587 (D. Del. 2003) ("[W]here a board member's only contact with the forum has been in the scope of his corporate capacity, the individual's contact is insufficient to support the exercise of personal jurisdiction."); *Overseas Partners, Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti*, 15 F.3d Supp. 2d 47, 51 (D.D.C. 1998) ("Personal jurisdiction over officers of a corporation in their individual capacities must be based on their personal contacts with the forum, not their acts and contacts carried out solely in a corporate capacity."); *see also Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998) (holding attendance at board meetings in state is insufficient to establish personal jurisdiction over an individual defendant); *Mates v. North American Vaccine, Inc.*, 53 F. Supp. 2d 814, 821 (D. M.D. 1999) ("Despite…being a board member…, if his only contact with the forum state was entirely within the scope of his corporate capacity, he cannot be subjected to this Court's jurisdiction.").

only mention of the State of Georgia in plaintiff's Complaint is that defendant McGee occasionally used a cell phone with a Georgia area code to communicate with plaintiff.  (*See* Compl. ¶ 12.)  Of course, a "cell phone prefix, unlike a landline, is not dispositive of residence, domicile, or location of the cell phone owner."  *See Sojka v. Loyalty Media LLC*, 2015 WL 2444506, at *3 (N.D. Ill. May 20, 2015).  What's more, plaintiff does not allege that he and McGee did anything more than engage in personal conversations—not that plaintiff and McGee ever transacted business during those phone calls.  Thus, there can be no purposeful **business** transaction from plaintiff's and McGee's telephone conversations that would give this Court jurisdiction over McGee under Georgia's long-arm statute.[9]

### B.  Plaintiff's Complaint Fails To Allege Facts Sufficient To Show That Exercise Of Jurisdiction Comports With Due Process.

Even if the Complaint alleged business contacts to support personal jurisdiction under the Georgia long-arm statute, it does not plead that exercise of this Court's jurisdiction would comport with due process.  "The Due Process

---

[9]  Although courts have held that a defendant need not physically enter the state to "transact business," and courts will consider a nonresident's mail, telephone calls, and other "intangible" acts, though occurring while the defendant is physically outside of Georgia, *see Diamond Crystal Brands, Inc.*, 593 F.3d at 1260 (applying Georgia law and citing *Innovative Clinical*, 620 S.E.2d at 355–56), the "intangible" contact must still result in a business transaction. *See id.* at n. 18 (defining "transact business" for purposes of the Georgia long-arm statute.)  No such business transaction is alleged here.

Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985), quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). "By requiring that individuals have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign, the Due Process Clause gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King Corp.*, 471 U.S. at 472, citing *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

For the reasons stated in Part I.A. above, the assertion of general jurisdiction over defendants would not comport with due process.[10] Thus, if defendants are

---

[10] The Supreme Court has held that for general jurisdiction to arise over a corporation, the company must be "fairly regarded as at home" in the forum jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011); *see also*, *e.g.*, *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding that general jurisdiction was not appropriate despite fact that defendant sent its chief executive officer to Texas for a contract-negotiation session; accepted checks drawn on a Houston bank; purchased helicopters, equipment, and training services from a Texas enterprise for substantial sums; and sent personnel to Texas for training). No such allegation or argument exists here as to Nautic.

subject to jurisdiction at all, they are subject to specific jurisdiction. To justify specific jurisdiction, the "the defendant must have "purposefully availed" itself of the privilege of conducting activities—that is, purposefully established contacts—in the forum state and there must be a sufficient nexus between those contacts and the litigation." *Diamond Crystal Brands, Inc.*, 593 F.3d at 1267 (applying Georgia law), citing *Burger King*, 471 U.S. at 472–73; *see also Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1222–23 (11th Cir. 2009).

There are no such minimum contacts here. Again, the only "transactions" that plaintiff alleges caused his purported injuries are (1) New Reliant's repurchase of his Class A Units and (2) defendants' alleged failure to inform plaintiff of the recapitalization of New Reliant and the eventual acquisition by HealthSouth. The first type of transaction, in which a non-resident purchaser contracts with a resident seller, has repeatedly been found to be insufficient to establish the minimum contacts required for the exercise of specific jurisdiction. *See Diamond Crystal Brands, Inc.*, 593 F.3d at 1268, citing *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 768 F.2d 1055, 1063 (11th Cir. 1986); *see also Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314 (8th Cir. 1982); *Lakeside Bridge & Steel Co. v. Mt. State Constr. Co., Inc.*, 597 F.2d 596, 603 (7th Cir. 1979). And, in any event, plaintiff has not even sued the purchaser, New Reliant. Instead, he has

sued people and entities who were not parties to that transaction. The second alleged "transaction" is not a transaction at all—indeed, it is the absence of a transaction. *Not* informing a Georgia resident of a potential future event cannot possibly be a contact that supports specific jurisdiction; if it were, the Due Process Clause would be rendered meaningless. *See Chlebda v. H.E. Fortna and Bro., Inc.*, 609 F.2d 1022, 1023–24 (1st Cir. 1979) ("It seems clear that [an omission] could not [furnish the minimum contact with a state to confer jurisdiction]. The whole thrust of plaintiff's claim is that there was no contact at all.").[11]

## II. THIS COURT IS NOT A PROPER VENUE FOR PLAINTIFF'S SUIT.

Even assuming, counterfactually, that this Court has personal jurisdiction over defendants, plaintiff's Complaint should be dismissed under Rule 12(b)(3) because plaintiff signed a forum selection clause requiring him to bring any claims related to the repurchase of his Class A Units in Delaware courts. *See Slater v. Energy Servs. Group Int'l, Inc.*, 634 F.3d 1326, 1333 (11th Cir. 2011); *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1299 (11th Cir. 1998).

---

[11] *See also Sulak v. American Eurocopter Corp.*, 2009 WL 2849136, at *7 (D. Haw. Aug. 26, 2009); *Gayda v. Union of Soviet Socialist Republics*, 1987 WL 6390, at *4 (E.D.N.Y. Feb. 3, 1987); *Zapata v. HSBC Holdings plc*, 2017 WL 6939209, at *4 (S.D. Tex. Sept. 14, 2017); *Ahmed v. United Airlines, Inc.*, 1998 WL 289294, at *4 (N.D. Cal. Apr. 21, 1998).

In the LLC Agreement pursuant to which plaintiff purchased 400,000 Class A Ownership Units and the company retained the right to re-purchase those units (*see* Ex. 1, LLC Agreement § 7.9 and Schedule A), plaintiff consented "TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF DELAWARE AND THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE . . . FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY." (*Id.* § 12.15(a).) Furthermore, plaintiff expressly waived "ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS OF THE STATE OF DELAWARE." (*Id.* § 12.15(b).)

This unambiguous forum selection clause bars plaintiff from bringing suit on his claims anywhere other than federal or state court in Delaware. In a nutshell, plaintiff now alleges that but for the defendants' alleged misconduct, he would not have sold his New Reliant ownership units for the amount he received for them. But the Company's repurchase of plaintiff's Class A Units is one of the very "TRANSACTIONS CONTEMPLATED" by the LLC Agreement: indeed, the company's right to repurchase plaintiff's holdings is explicitly set forth in the

agreement in great detail.  (*See id*. § 7.9.)[12]  Plaintiff's attempt to circumvent this clear forum selection clause should be rejected.

## III.  PLAINTIFF HAS RELEASED HIS CLAIMS AGAINST DEFENDANTS.

Even if the exercise of jurisdiction and venue were appropriate here (which they are not), plaintiff's Complaint should still be dismissed under Rule 12(b)(6) for failure to state a claim because plaintiff signed a Settlement Agreement that explicitly released his claims against defendants, and he further ratified that release by failing to return the $129,296 New Reliant paid him for it.

In his September 16, 2014 Settlement Agreement, plaintiff unequivocally released New Reliant and its affiliates from claims relating to New Reliant's repurchase of his Class A Units (*i.e*., the entire basis of plaintiff's Complaint):

---

[12]  Plaintiff does not allege that this forum selection clause should be invalidated, nor could he.  "Mandatory forum selection clauses are 'presumptively valid and enforceable' absent a 'strong showing that enforcement would be unfair or unreasonable under the circumstances.'"  *Slater*, 634 F.3d at 1331, quoting *Krenkel v. Kerzner Int'l Hotels Ltd.*, 579 F.3d 1279, 1281 (11th Cir. 2009).  No such unfairness or unreasonableness exists here.  Plaintiff does not allege that the forum selection clause was procured by fraud.  He does not allege he would be deprived of his day in court were he required to re-file this case in Delaware.  And he does not allege that re-filing would deprive him of a remedy or contravene public policy.  *See id*.  To the contrary—because the court that will adjudicate these claims will be required (per the parties' agreement) to apply Delaware law to the actions of a Delaware LLC, it is far more convenient for all the parties and the court if this case proceeds in Delaware.

As of the Execution Date, and conditioned only upon Brohm's receipt of the Final Repurchase Payment, Brohm hereby fully, unconditionally, and finally releases, acquits, and forever discharges with prejudice, and shall be and is forever enjoined from prosecution of, and covenants not to sue, New Reliant or any parent, subsidiary, or affiliated corporation of New Reliant for any and all claims arising out of or related to (i) New Reliant's repurchase of the Repurchased Units pursuant to Section 7.9 of the LLC Agreement, or (ii) Brohm's ownership of the Class A Units of New Reliant or any other interest in New Reliant or any parent, subsidiary, or affiliated corporation of New Reliant, including any rights or obligations of Brohm under the LLC Agreement.

(Ex. 10, Settlement Agreement § 2(a).) Moreover, plaintiff agreed that the benefits of this release would inure to "the undersigned Parties and their respective officers, directors, agents, employees, heirs, successors, attorneys, and any parent, subsidiary, or affiliated corporation." (*Id*. § 5.) Thus, plaintiff released the defendants here. When plaintiff signed the release, Nautic was an "affiliate" of the investment funds that owned New Reliant (*see* Compl. ¶¶ 39, 53); McGee and Crouch were "officers" and "employees" of New Reliant (and Crouch was the signatory for New Reliant on the Agreement) (*see id*. ¶ 42; Ex. 10, Settlement Agreement at 5); and Hilinski was a "director" of New Reliant (*see* Ex. 1, LLC Agreement § 6.2).

Under Delaware law, which governs the Settlement Agreement (*see* Ex. 10, Settlement Agreement § 8), this release is valid and defeats plaintiff's claims. *See Adams v. Jankouskas*, 452 A.2d 148, 155 (Del. 1982) ("Delaware law recognizes

the validity of a general release."); *Chakov v. Outboard Marine Corp.*, 429 A.2d 984, 985 (Del. 1981) ("[W]e see no legal reason why an injured party cannot give a general release, including a release of third parties strangers to the contract."); *Deuley v. DynCorp. Int'l, Inc.*, 8 A.3d 1156, 1163 (Del. 2010) ("Delaware courts recognize the validity of general releases."). Under Delaware law, "[a] clear and unambiguous release will only be set aside where there is fraud, duress, coercion, or mutual mistake concerning the existence of a party's injuries." *Deuley*, 8. A.3d at 1163 (citations and alterations omitted). Here, plaintiff's release is unambiguous and explicitly bars him from bringing any claims related to New Reliant's repurchase of his Class A Units. Furthermore, plaintiff cannot avoid the effects of the release by claiming that he was fraudulently induced to sign the Settlement Agreement. In exchange for the Settlement Agreement and release, plaintiff received a payment from New Reliant of $129,296. (Compl. ¶ 49; Ex. 10, Settlement Agreement § 1.1(a).) Plaintiff has never returned or offered to return that payment, though he now appears to argue (without mentioning the Settlement Agreement by name) that the release was somehow procured under duress or by fraud. He cannot do that.

"Under Delaware law, a party to a voidable contract may petition the court for a recession of the agreement, ***however, the party seeking to rescind an***

**agreement must restore the status quo ante (*'tender back doctrine'*).**" *Halstead v. Am. Int'l Group Inc.*, 2005 WL 885200, *2 (D. Del. Mar. 11, 2005) (emphasis added), citing *Rudnitsky v. Rudnitsky*, 2001 WL 1671149, *6 (Del. Ch. Dec. 20, 2001). The effect of failing to tender back the consideration is that the party ratifies the agreement and waives any claims he may have had that the contract was voidable. *Rudnitsky*, 2001 WL 1671149, at *6 (holding that "[plaintiff's] retention of the settlement benefits also independently defeats his claims of duress and undue influence" because "a contract agreed to under duress (or by reason of undue influence) is voidable at the option of the victim, such an agreement may be ratified and rendered fully enforceable."). Thus, plaintiff's last-minute suggestion that he was somehow defrauded when he entered into the Settlement Agreement and its release cannot allow him to escape its effects. Plaintiff by his own admission is aware of the alleged fraud, and has brought suit for the alleged fraud, but has not returned his sizable consideration. The release has thus been ratified and bars his claims.

IV.    **PLAINTIFF'S CLAIM FOR FRAUD (COUNT I) IS TIME-BARRED AND IN ANY EVENT FAILS TO STATE A CLAIM UNDER RULES 9 AND 12(b)(6).**

Even if plaintiff could avoid the release, Count One of his Complaint should be dismissed as untimely and for failure to plead fraud with particularity.

## A. Delaware's Three-Year Statute Of Limitations Bars Plaintiff's Fraud Claims.

In Delaware, the statute of limitations for a fraud claim is three years. *See* Del. Code Ann. tit. 10, § 8106(a); *In re American Intern. Group, Inc*., 965 A.2d 763, 811–12 (Del. Ch. 2009). This statute "is not a 'discovery statute,' and the limitations period begins to run from the time the cause of action accrues." *SmithKline Beecham Pharms. v. Merck & Co*., 766 A.2d 442, 450 (Del. 2000). A cause of action for fraud thus begins to accrue at the time of the alleged wrongful conduct "even if the plaintiff is ignorant of the cause of action." *Id.*

In Count One, plaintiff asserts defendants defrauded him by failing to inform him about New Reliant's recapitalization and the sale to Health South prior to New Reliant's repurchase of his Class A ownership units. (*See* Compl. ¶¶ 58–60.) Plaintiff's claims therefore accrued no later than September 16, 2014, when New Reliant repurchased those units. (*See* Compl. ¶ 49; *see also* Ex. 10, Settlement Agreement.) Plaintiff does not allege any facts justifying why the statute of limitations should be tolled. Thus, plaintiff's fraud claim expired no later than September 16, 2017, which means that his lawsuit comes over a year too late.

## B. Plaintiff Fails To State A Claim For Fraud.

Plaintiff also fails entirely to allege fraud with the specificity required by Rule 9(b). To state a claim for common law fraud under Delaware law, plaintiff:

must plead facts supporting an inference that: (1) the defendants falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendants knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendants intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable reliance on the representation; and (5) the plaintiff was injured by its reliance.

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 207 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007). Moreover, under Rule 9(b), plaintiff must plead such facts with particularity; or in other words, plaintiff must "set[] forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001), quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

Plaintiffs utterly fails to plead these requisite allegations. First, plaintiff's fraud claim is premised on the notion that defendants had some duty to inform plaintiff "as a shareholder" about New Reliant's subsequent recapitalization and sale to HealthSouth. (Compl. ¶¶ 67–70.) But plaintiff's allegations do not satisfy

even the first element of a Delaware fraud claim, because he fails to allege that defendants had any such "duty to disclose."

Nor could he.  The LLC Agreement pursuant to which plaintiff obtained his Class A Units explicitly disclaims any duty that defendants might otherwise have had to provide plaintiff information regarding the fair market value of his Class A Units:

> **Section 6.6** **<u>Exculpation</u>** . . . (c) No Covered Person shall have any duty (including any fiduciary duty or any other duty or standard of care that may arise by default principles of law) to the Company or any Subsidiary or the Company's Members, Managers or to other Persons that are party to or otherwise bound by this Agreement, <u>provided</u>, <u>however</u>, that nothing in this Agreement eliminates the implied contractual covenant of good faith and fair dealing. . . .

(Ex. 1, LLC Agreement at § 6.6.)  The LLC Agreement defines "Covered Person" to include "(a) each Investor Member, (b) each officer, director, manager, stockholder, employee, member, partner, representative, or agent of each Investor Member, (c) each Manager, (d) any Liquidator, and (e) any other Person designated by the Board as a Covered Person."  (*Id*. at § 1.1.)  Thus, Nautic is a "Covered Person" as the representative or agent of the Nautic "Investor Members" (*see id*.),[13] Hilinski is a "Covered Person" as a "Manager" of New Reliant (*see id*.

---

[13]  Alternatively, Nautic had no fiduciary obligation to plaintiff in the first place, since it was never a director, officer or member of the New Reliant LLC.

at §§ 1.1, 6.1), McGee is a "Covered Person" as an "Investor Member[]" (*see id.* at § 1.1); and Crouch is a "Covered Person" as a "Manager" (*see id.* at §§ 1.1, 6.1, 6.2.)  By signing the LLC Agreement, plaintiff thus agreed that no defendant had any duty, fiduciary or otherwise, toward him, and he has no basis for alleging such a duty now.

Even if plaintiff could allege some duty on the part of defendants to inform him of future transactions, he fails to plead basic facts showing that defendants knowingly omitted that information from plaintiff when New Reliant repurchased his Class A Units.  Plaintiff alleges no facts showing that any of the defendants knew about the recapitalization as of September 2014 when plaintiff sold back his shares.  Instead, plaintiff merely asserts the legal conclusion that defendants "had access to and were aware of information, including the Reliant recapitalization and sale to HealthSouth, that Brohm, as a shareholder, did not and could not have access to or know." (Compl. ¶ 58.)  Plaintiff does not allege which defendants had access to the information, ***when*** they had access to the information, and ***what information specifically*** regarding the recapitalization and HealthSouth transaction they had access to.  This is critical because the recapitalization occurred months after plaintiff sold his ownership units, and the HealthSouth transaction occurred over a year later.  Simply because these transactions eventually occurred does not

mean that all of the defendants knew about them or were planning them in September 2014, and plaintiff alleges no facts showing that defendants had any more information about the future transactions than plaintiff did when he resold his ownership units.

## V.   PLAINTIFF'S CLAIM FOR BREACH OF FIDUCIARY DUTY (COUNT II) IS TIME-BARRED AND IN ANY EVENT FAILS TO STATE A CLAIM FOR RELIEF.

Plaintiff's claim for breach of fiduciary duty (Count Two) is likewise barred by the applicable three-year statute of limitations, and in any event fails to state a claim.   As noted above, when plaintiff signed the LLC Agreement, he unambiguously agreed to waive and relinquish any claims he might have against defendants for breach of fiduciary duty.

### A.   Delaware's Three-Year Statute Of Limitations Bars Plaintiff's Claims.

Delaware law provides for a three-year statute of limitations for claims of breach of fiduciary duty.  *See* Del. Code Ann. tit. 10, § 8106(a); *In re Tyson Foods, Inc.*, 919 A.2d 563, 584 (Del. Ch. 2007) ("A three-year statute of limitations applies to breaches of fiduciary duty, and the matter is properly raised on a motion to dismiss.").  As with a claim for fraud, "[t]he statute of limitations begins to run at the time the cause of action accrues, which is generally when there has been a harmful act by a defendant.  This is true even if the plaintiff is unaware of the

cause of action or the harm." *Id.*; *see also Isaacson, Stolper & Co. v. Artisan's Sav. Bank*, 330 A.2d 130, 132 (Del. 1974). Plaintiff asserts defendants breached their fiduciary duties by failing to inform him—on or before September 16, 2014— of future New Reliant transactions. (*See* Compl. ¶¶ 57–65.) Thus, the three-year statute of limitations expired no later than September 16, 2017, and any claim for breach of fiduciary duty is therefore time-barred.

### B. Plaintiff Expressly Waived Any Claim For Breach Of Fiduciary Duty Related To New Reliant Or The Class A Units.

Count Two also fails to state a claim because plaintiff unambiguously waived any claim for fiduciary duty he might otherwise have had against defendants related to New Reliant or the Class A Unit transactions. As noted above, upon the closing of the New Reliant acquisition of the Reliant assets in March 2011, plaintiff signed the LLC Agreement, Section 6.6 of which specifically disclaimed any fiduciary duties any "Covered Person," including defendants, would have as to plaintiff. *See supra* Part IV.B. Moreover, the LLC Agreement contained the following additional waiver provision regarding fiduciary duties:

> **Section 12.13 <u>No Fiduciary Duties of Members</u>**. No Member shall have any duties, fiduciary or otherwise, to the Company or any other Member or its Affiliates, in each case, other than the duty to act in good faith and exercise commercially reasonable judgment, in complying with contractual obligations applicable to such Member hereunder. Each Member, on behalf of itself and its Affiliates, hereby waives, to the maximum extent permitted by law, any and all rights

1717179.1

and claims which it, he or she may otherwise have against any other Member and such other Member's officers, directors, shareholders, partners, members, managers, agents, employees, and Affiliates as a result of any claims of breach of fiduciary duties . . . .

(Ex. 1, LLC Agreement at §§ 6.6, 12.13.)   Under Section 12.13, each of the defendants (along with plaintiff) is a "Member":[14]   Nautic is an "Investing Member" and "Nautic Member" (*see id*. § 1.1), Hilinski is a "Nautic Member" (*id*.), and McGee and Crouch are "Management Members" (*id*.).   Thus, Sections 6.6 and 12.13 of the LLC Agreement waive any right plaintiff may have to bring a breach of fiduciary claim against defendants.

The Delaware Limited Liability Company Act is clear that members, managers, or affiliates of an LLC may disclaim their fiduciary duties:

To the extent that, at law or in equity, a member or manager or other person has duties (including fiduciary duties) to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement, the member's or manager's or other person's duties may be expanded or restricted or eliminated by provisions in the limited liability company agreement; provided, that the limited liability company agreement may not eliminate the implied contractual covenant of good faith and fair dealing.

---

[14]   The LLC Agreement defines "Member" as: "each Person that executes a counterpart of this Agreement, or an Incentive Units Agreement, as a Member, and becomes a Member as provided herein or therein, as applicable, so long as such Person continues as a Member and is reflected as such in the records of the Company, in each case in such Person's capacity as a member of the Company, and 'Members' means all such Persons."  (Ex. 1 § 1.1.)

Del. Code Ann. tit. 6, § 18-1101(c). The Act further provides that "[a] limited liability company agreement may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a member, manager or other person to a limited liability company or to another member or manager or to another person that is a party to or is otherwise bound by a limited liability company agreement." *Id*. § 18-1101(e).

Pursuant to these provisions, Delaware courts commonly recognize that agreements similar to the LLC Agreement will block claims for breach of the disclaimed duties. *See*, *e.g.*, *In re Atlas Energy Resources, LLC*, 2010 WL 4273122, *12 (Del. Ch. Oct. 28, 2010) ("[The LLC Agreement] unambiguously eliminates the traditional fiduciary duties of Energy's directors and officers. Thus, the only duties owed by the Individual Defendants are those set forth elsewhere in the LLC Agreement or imposed by the implied covenant of good faith and fair dealing."); *Fisk Ventures, LLC v. Segal*, 2008 WL 1961156, *11 (Del. Ch. May 7, 2008) (holding that party's claims for breach of fiduciary duty fails where "the LLC Agreement, in accordance with Delaware law, greatly restricts or even eliminates fiduciary duties"). Plaintiff is attempting to controvert this clear Delaware law in bringing a claim that is specifically disclaimed (twice over) in the LLC Agreement. His claim must therefore fail as a matter of law.

## VI. PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT III) IS TIME-BARRED AND IN ANY EVENT FAILS TO STATE A CLAIM FOR RELIEF.

Finally, plaintiff's claim for intentional infliction of emotional distress (Count Three) is both time-barred and inadequately pled.

### A. Delaware's Two-Year Statute of Limitations Bars Plaintiff's Claim.

Delaware law provides for a two-year statute of limitations period for personal-injury claims. Del. Code Ann. tit. 10, § 8119.[15] Delaware courts have held that emotional injuries are personal injuries for statute of limitations purposes and, therefore, that a two-year limitations period applies to such claims. *Lankford v. Scala*, 1995 WL 156220, at *5 (Del. Super. Ct. Feb. 28, 1995); *Anderson v. Anderson-Harrison*, 2013 WL 4492797, at *4 (Del. Super. Ct. Aug. 15, 2013) (citing *Carr v. Town of Dewey Beach*, 730 F. Supp. 591 (D. Del. 1990)). As previously noted, plaintiff's claims accrued no later than September 16, 2014, when plaintiff agreed to New Reliant's repurchase of his ownership units; but even

---

[15] Other jurisdictions employ comparable statutes of limitations for personal injury actions. Like Delaware, Georgia provides a two year statute of limitations. Ga. Code Ann., § 9-3-33. In Rhode Island, the statute of limitations is three years. 9 R.I. Gen. Laws § 9-1-14(b); *Adams v. Town of Burrillville ex. rel. Mainville*, 249 F. Supp. 2d 151, 154 (D.R.I. 2003). Even in Rhode Island, the 2014 events plaintiff alleges fall outside the statute of limitations period.

assuming that his claim for emotional distress did not accrue until the public announcement of the completion of the HealthSouth acquisition of New Reliant on October 1, 2015 (*see* Compl. ¶ 53), plaintiff's claim falls outside of the limitations period. Thus, plaintiff's claim for intentional infliction of emotional distress expired no later than September 16, 2016 (or alternatively, October 1, 2017), and Count Three must therefore be dismissed as untimely.

### B. Plaintiff Has Failed To State A Claim For Intentional Infliction Of Emotional Distress.

In any event, the Complaint fails entirely to plead a claim for intentional infliction of emotional distress. Delaware follows the Restatement (Second) of Torts Section 46, which defines the tort as: "One who by extreme and outrageous conduct intentionally and recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *Spence v. Cherian*, 135 A.3d 1282, 1288-89 (Del. Super. Ct. 2016).[16]  Courts in Delaware have defined "extreme and

---

[16]  Similar to Delaware, Rhode Island and Georgia both require a plaintiff to prove the following elements for intentional infliction of emotional distress: (1) intentional or reckless conduct, (2) that is extreme and outrageous and (3) causes emotional distress that (4) is severe. *Adams*, 249 F. Supp. 2d. at 155 (citing *Champlin v. Washington Trust Co. of Westerly*, 478 A.2d 985, 989 (R.I. 1984)); *Mears v. Gulfstream Aerospace Corp.*, 225 Ga. App. 636, 639, 484 S.E.2d 659, 663 (1997) (citing *Trimble v. Circuit City Stores*, 220 Ga. App. 498, 499, 469 S.E.2d 776, 778 (1996)). In addition, Rhode Island requires

outrageous conduct" as that which "exceeds the bounds of decency and is regarded as intolerable in a civilized community." *Id.* at 1289, quoting *Thomas v. Hartford Mut. Ins. Co.*, 2004 WL 1102362, at *3 (Del. Super. Ct. Apr. 7, 2004).

Plaintiff has not alleged ***any*** conduct that meets this high standard of extreme and outrageous conduct. Rather, he has merely pled a "formulaic recitation of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted), which insufficient to state a claim under Rule 12(b)(6). Plaintiff does not plead any conduct by defendants except that they purportedly failed to inform him of future New Reliant transactions. But plaintiff does not allege facts even supporting the conclusion that defendants knew about these transactions as of September 2014 when plaintiff resold his Class A Units to New Reliant, let alone that knowing and failing to inform plaintiff about these transactions was "outrageous." This is not sufficient to support any claim for intentional infliction of emotional distress.

## CONCLUSION

WHEREFORE, Defendants respectfully request that plaintiff's Complaint be dismissed in its entirety with prejudice.

---

"some proof of medically established physical symptomatology." *Adams*, 249 F. Supp. 2d at 155 (citing *Vallinoto v. DiSandro*, 688 A.2d 830, 838-40 (R.I. 1997)). Plaintiff does not allege any physical manifestation of his injury.

Dated: October 15, 2018

Respectfully submitted,

/s/ *Tiana S. Mykkeltvedt*

Michael B. Terry
Ga. Bar No. 702582
Tiana S. Mykkeltvedt
Ga. Bar No. 533512
BONDURANT MIXSON & ELMORE LLP
1201 W. Peachtree St., NW
Suite 3900
Atlanta, GA 30309
Tel: 404-881-4100
Fax: 404-881-4111

John F. Hartmann, P.C., *admitted pro hac vice*
Casey R. Fronk, *admitted pro hac vice*
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
Tel: 312-862-2000
Fax: 312-862-2200
john.hartmann@kirkland.com
casey.fronk@kirkland.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT was prepared in Times New Roman, 14 point font, in accordance with Local Rule 5.1.

/s/ *Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule 5(A)(3) on October 15, 2018.

*/s/ Tiana S. Mykkeltvedt*
Tiana S. Mykkeltvedt